Alright, the next case on calendar is Green v. City of Tucson. The counsel for Green has advised the court that they do not intend to appear. And the City of Tucson has asked to take its 20 minutes, so you may. May it please the court, good morning and good afternoon to you, Judge Gibson. Good afternoon. My name is Dennis McLaughlin. I'm a Principal Assistant City Attorney with the City of Tucson. I represent the city in this matter, and I will also be speaking on behalf of the town of Oro Valley, which has no representative present, and the town of Marana, whose City Attorney, Mr. Hockula, is with me at the council table but will not argue. Thank you very much for the opportunity to speak to you. I realize that under FRAP 34E, this is discretionary with the court, and I realize the court's time is valuable, and I appreciate this. Up to last Thursday, I was pretty clear what I was going to begin with. I've since received Mr. Ching's motion, and I would like to ask the court, would you prefer that I address that motion first or my substantive points? You mean his motion to submit the case? Well, I think we'd like to know whether you agree with him that Columbia Gorge controls, because although he seems to think so, I don't know whether it does or not. I mean, I have some concerns about that. I would definitely like to address that, Your Honor. I certainly agree with Mr. Ching that this case ought to be affirmed, but at the risk of looking a gift horse in the mouth, I think the motion ought to be denied. We were offered a stipulation after this motion went in that would have effectively said the same words, and I would have signed off on it, and I did not want to do that. I don't believe we can tell this court to affirm a case or why it should affirm a case. In addition, I believe that this, in effect, is a bypassing of the panel, or would be, and that there's a procedure for getting an en banc panel initially under FRAP 35C that was not followed here. And to get to your question, I believe that Uter is a useful case for our side, in that it talks about geographical distinctions, and that the state can make geographical distinctions as to, in that case, having land use decisions made by persons who were elected versus non-elected in different areas. But Uter, I have problems with saying that Uter controls this case, and let me tell you specifically why. First of all, Uter was a challenge to a federal statute under the Fifth Amendment's Equal Protection Component of the Due Process Clause. We have a challenge to a state statute under the Fourteenth Amendment, as you're well aware. In that case, there was a compact which was being entered into by both the states with the consent of Congress, and there was a certain level of federal involvement. Specifically, I believe the Secretary of Agriculture was going to appoint at least one of these commission members who were not elected. In our case, so one point is that you have Supremacy Clause issues, which I think Judge Schroeder addressed, although I don't think anything was addressed at great length in that case, when she said, is there a problem with state and local rules being overruled? And she said, well, yes, there could be a problem, except that what I read, the Supremacy Clause, the federal law would simply control. Here we have an issue that I think is much more historically left to the states. That is the creation of a state's own municipalities, and therefore I think that Uter is frankly not a controlling case. And I go back to what I said. I think what it says is useful about the geographical distinction. But I think we've told the court, we've given the court other cases, the Mixon case with the Cleveland School Board, the Palisade Fruitlands case about when initiative was possible in different counties, the Barefoot case, which dealt specifically in the Fourth Circuit with incorporation and annexation. We've given you other examples where geographical distinctions were okay. Could I ask you this question? I've been trying to formulate how we frame the equal protection argument or analysis. So as I understand, pre-1961, anybody who had the requisite number of residents of an area could petition to have incorporation put to a vote, right? Yes, or petition for direct incorporation. Or petition for direct. But in this case, it was petition for a vote. Yes, that's what that said, issue here. So then the legislature imposed a constraint on that by saying, however, if that group of folks who want to incorporate come within six miles of a heavy hitter like Tucson, Tucson essentially has a veto. Yes. Okay. So now what you have is, and I know there was this interval where it was litigated that the constitutionality is suspending that. But just skipping over that detour. What then is left is you have within the state of Arizona a group of people, until they define themselves or are undefined, but they define themselves as a potential new town, let's say, and they petition to have the vote on whether that town should be incorporated. And they get all the necessary signatures, and that's put forward. And so then it would be put to a vote. Then you have a group of folks who, by circumstance of being within six miles of, say, Tucson, go through exactly the same process. Yes. But they can't get the vote unless Tucson says, okay. Now, how do we structure the equal protection analysis in that? Because it seems to me that if you compare Group A with Group B, Group B being the ones proximate to Tucson, Group A has a right to vote that is unfettered by this thumbs-down veto, and Group B is fettered. And so that's the question I have. The distinction that I make, I call them either a group of persons who wish to incorporate or a group of persons who wish to hold an incorporation election. And those are the two groups you're distinguishing between depending on where they are located. Well, they both want to have an election. Yes. But what the law says is that the state is allowed to rationally create distinctions as to what they have to do before the state will allow that election. Well, we have a case in this circuit, the Oregon case.  The Hussie case, which treated the consent part of the process as a vote. So is not the petition process a form of vote? That is appellant's position. It is not our position. Okay. Now, why isn't it a vote to have a vote? What the case law says on that, Your Honor, is that the petition doesn't have ñ a petition is not like an election. It's not all held as a snapshot. It's collected over time. And I believe both the Sixth and Eighth Circuits have said that, in fact, a petition does not have the same level of protection as a vote per se, because it's not really the same as a vote. I think you make a good point about it being a vote to have a vote. Let me address Hussie, because that's an important case to understand, specifically as to why it doesn't apply here. In Hussie, what was happening was the city of Portland had defined an annexation district. And within that district, they were treating ñ let's call them voters, let's call them petitioners, whatever you want to call them, because they had to consent both as voters and as property owners. They treated them within the district differently, depending on whether they consented or not. They got money if they consented, basically. And this court, and I think rightly so, said, we have a great concern here about vote buying, that within this district, they are burdening the right to vote. Where that's different from our case is that we're dealing with two separate groups of people, one of whom, in terms of the equal protection analysis, one of whom lives within that six-mile zone, and one of whom does not. And they both want to hold an election, in our hypothetical. But they are not the same group. And what the voting rights cases say you can't do as a state is you can't define one election district and then within the same district for the same election say that only certain people can vote. It is perfectly okay for the state to say, as they do here, you people in the urbanized area need to have an additional requirement that you meet. You have to get consent from the existing municipalities. And that is not a voting rights problem, according to what the case law says, because it's not a discrimination. What's your most direct case on that? I would say the most direct case allowing the geographical is the Adams case, which was affirmed by the Supreme Court. The most direct cases on saying what a voting rights issue is are the cases from 65 to 72, everything from Carrington v. Rash, Dunby v. Blumstein, Evans v. Kornman, Kolodziejczki. In every one of those cases, you had an electorate where only a portion of the electorate, for instance the Kolodziejczki and the Houma cases, the bond issue cases, only the real property owners could vote. And that used to be what the Arizona incorporation statute said, was that once there was an election called, only real property owners could vote. And in 72, that was changed, probably because of concern on voting rights. But they never changed the idea that geographically the state could say, we rationally have a reason, avoidance of fragmentation of government, allowance of annexation by existing municipalities. We have rational reasons to say we're going to make it harder for someone to get an election when they're near a municipality than when they're not. Even though those people pre-incorporation are all part of the same county, Pima County in this case. Yes. And by coming together, they are self-defining themselves into an election district. In terms of what the statute does, that's right. And if you look at 9101B, it's not a county-wide vote. Under 9101B, it says, you draw your lines of your prospective town. And everybody who's a qualified elector within those lines, if you meet all these other requirements and we say you can hold an election if we allow you to call it, everybody votes, so not everyone in the county votes. That's another thing that I think the appellants have tried to confuse the issue is what the electorate is here. And the electorate in an incorporation election is the people within the proposed boundaries. And then, as you said, they self-define in terms of where they are when they ask the state for an election under the statutes. So your argument, then, is that the equal protection analysis, the voting rights analysis, kicks in only once the unit is defined. And then your examination is as to the electoral unit that's been created. And if everybody within that unit gets the same vote, notwithstanding that there's the 800-pound gorilla for some of them who prevents the vote. Yes. That's okay. And I think the Bush v. Gore case that talked about where Justice O'Connor said the right to vote is fundamental once it is granted. The vote is not granted, in our view, until all the preconditions are met. I know that's the little hurdle that I'm having a little trouble with, because coming back to the vote to have a vote, it is, in effect, a voting process. The voters are saying, we want to vote to put this, that is, if you treat a petition as a vote, we want to put this on the ballot. And you allow one entity, in this case, to say no. But what we don't do is interfere with the people trying either to vote or to get the vote. There's nothing in the record. You do. Right. The city did not interfere with anyone circulating a petition. It didn't need to, because it could just unilaterally say no, no consent. Yes, because the statute says there shall be no action on petitions, no calling of elections, no creation of incorporated areas, absent consent if it's within that urbanized area. That's all pre-election. And there's no voting rights discrimination in the same election within the district. It's all pre-election, but if that book isn't jumped through, then you don't get to the election. That is true, Your Honor. That is correct, as long as you're in an urbanized area. Now, the other way you can do it, this has no application here, but if you had tried to be annexed and they had refused to annex you, then that would be another way you would be free. You wouldn't have to go get the consent. But fundamentally, on our facts, you're absolutely right, Your Honor. If the court has no further questions, we feel that the district court thoroughly and correctly analyzed this, and we'd ask you to affirm. And I very much appreciate the opportunity to speak. We appreciate hearing from you and appreciate your candor. This case is disargued. The green case will be submitted, and we'll stand in recess for the day. Thank you.
judges: Hug, Gibson, Fisher